UNITED STATES DISTRICT COURT　　　　　　　　**FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re: MORGAN STANLEY DERIVATIVE
LITIGATION　　　　　　　　　　　　　　　　No. 05 Civ. 6516 (LTS)(RLE)

-------------------------------------------------------　　　(Derivative Action)

This Document Relates To:

    ALL ACTIONS.

-------------------------------------------------------x

## OPINION

APPEARANCES:

| | |
|---|---|
| COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS, LLP<br> By: Mario Alba, Jr., Esq.<br>      Samual Howard Rudman, Esq.<br>58 South Service Road, Suite 200<br>Melville, NY 11747<br><br>*Attorneys for Plaintiffs* | WACHTELL, LIPTON, ROSEN & KATZ<br> By: Paul Vizcarrondo, Esq.<br>51 West 52nd St<br>New York, NY 10019<br><br>*Attorney for Defendants Edward A. Brennan, Sir Howard J. Davies, John E. Jacob, C. Robert Kidder, Charles F. Knight, John W. Madigan, Miles L. Marsh, Michael A. Miles, Laura D'Andrea Tyson, Klaus Zumwinkel* |
| LANKLER SIFFERT & WOHL LLP<br> By: John Sand Siffert, Esq.<br>500 Fifth Avenue, 33rd Floor<br>New York, NY 10110<br><br>*Attorney for Defendant Donald Kempf* | VENABLE LLP (NYC)<br> By: Edmund M. O'Toole, Esq.<br>      James Andrew Dunbar, Esq.<br>405 Lexington Ave, 62nd floor<br>New York, NY 10174<br><br>*Attorneys for Defendant Stephen S. Crawford* |
| DAVIS POLK & WARDWELL<br> By: Charles S. Duggan, Esq.<br>      Michael P. Carroll, Esq.<br>450 Lexington Avenue<br>New York, NY 10017<br><br>*Attorneys for Nominal Defendant Morgan Stanley* | |

Plaintiffs Central Laborers' Pension Fund, Plumbers and Pipefitters National Pension Fund, Betty Fliedner, Sonia Luceno, and James F. Groen ("Plaintiffs"), who assert that they were holders of Morgan Stanley stock at all relevant times, bring this derivative action on behalf of Morgan Stanley against former and current officers and directors of Morgan Stanley ("Defendants"), alleging violations of Sections 14(a) and 10(b) of the Securities Exchange Act of 1934 and asserting various state common law claims including breaches of fiduciary duty, gross mismanagement, waste of corporate assets, and legal malpractice. The Court has jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78a. The Court has supplemental jurisdiction of Plaintiffs' common law claims pursuant to 28 U.S.C. § 1367.

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Second Consolidated Amended Derivative Complaint ("SAC") for failure to state a claim, arguing that Plaintiffs failed to meet the demand requirements of Federal Rule of Civil Procedure 23.1 and that Plaintiffs' pleading is deficient on the merits as well. The Court has considered thoroughly the arguments and submissions of the parties in connection with these motions. For the reasons that follow, Defendants' motions to dismiss are granted.[1]

BACKGROUND

The Court construes all of Plaintiffs' well-pleaded, non-conclusory allegations as true in deciding a Rule 12(b)(6) motion to dismiss.[2] The allegations material to the resolution of

---

[1] Separate motions to dismiss were filed by Philip J. Purcell, Stephen S. Crawford, Donald G. Kempf, Jr., Nominal Defendant Morgan Stanley, and the other former and current directors together as a group ("Independent Directors").

[2] The factual summary in this section focuses on the allegations underlying Plaintiffs' federal claims and those relevant to the question of whether Plaintiffs were required

this motion are as follows. Plaintiffs were shareholders of Morgan Stanley at all relevant times. Nominal Defendant Morgan Stanley is a corporation organized under Delaware law with its headquarters located in New York. Morgan Stanley is a financial services company which offers investment banking, institutional sales, trading and research of equities and bonds, individual investor services, investment management services and credit services. (SAC ¶¶ 41-46.) Defendants, who are former and current directors or officers of Morgan Stanley, are named as follows: Phillip J. Purcell ("Purcell"), Edward A. Brennan ("Brennan"),[3] Stephen S. Crawford ("Crawford"), Sir Howard J. Davies ("Davies"), John E. Jacob ("Jacob"), C. Robert Kidder ("Kidder"), Charles F. Knight ("Knight"), John W. Madigan ("Madigan"), Miles L. Marsh ("Marsh"), Michael M. Miles ("Miles"), Laura D'Andrea Tyson ("Tyson"), Klaus Zumwinkel ("Zumwinkel") and Donald Kempf ("Kempf"). (Id. ¶ 1.)

On December 3, 2002, Morgan Stanley paid the Securities and Exchange Commission ("SEC") a $8.25 million fine for failing to comply with various SEC regulations that required investment banks such as Morgan Stanley to retain e-mail for certain periods of time. See 17 C.F.R. § 240.17a-4(b)(4). Morgan Stanley also agreed at that time to cease and desist from its non-compliance. (SAC ¶¶ 95-96.) Several years later, in January of 2005, the SEC Division of Enforcement issued a "Wells Notice" to Morgan Stanley, noting Morgan Stanley's potential

---

to have made a demand on the board before asserting their federal claims on behalf of the corporation. In light of the Court's determination, explained below, that Plaintiffs failed to make the required demands with respect to their federal claims, it is unnecessary for the Court to address the parties' arguments relating to Plaintiffs' common law claims and unnecessary, as well, for the Court to summarize here the allegations underlying those claims.

[3]   Defendant Brennan has died since the filing of this action. Notice of his death was made on the record and served on all parties on March 4, 2008, pursuant to Rule 25 of the Federal Rules of Civil Procedure. (See Docket Entries Nos. 72, 73.)

violation of the 2002 cease-and-desist order and informing it of the Division's recommendation that the SEC pursue an enforcement action relating to Morgan Stanley's failure to retain e-mails. (Id. ¶ 109.) In the same month, the board voted to increase its own compensation. (Id. ¶ 151.)

On or around February 15, 2005, a proxy statement was issued in connection with the annual shareholders meeting scheduled for March 15, 2005, at which four board members -- Jacob, Knight, Marsh and Tyson -- were seeking re-election. Defendants are alleged to have "concealed" from any mention in the proxy statement the fact that a Wells Notice had been received. (SAC ¶ 110.) In addition, Defendants are alleged to have "concealed" the Wells Notice from the public so that Morgan Stanley's repurchase of its own stock sometime in the first quarter of 2005 would be at an "artificially inflated price."[4] (Id. ¶ 174.) On March 15, 2005, Jacob, Knight, Marsh and Tyson, who did not face any opposition, were re-elected. Morgan Stanley did not reveal the Wells Notice until April 6, 2005, in its quarterly report. (Id. ¶ 111.)

Notwithstanding Plaintiffs' allegation that raises in director compensation were approved by the board in January 2005 (SAC ¶ 151), Plaintiffs also occasionally refer to increases in board compensation that supposedly resulted from stockholder approval of the February 2005 proxy statement's proposals (see, e.g., id. ¶ 170), though nothing in the actual proxy statement[5] makes any mention of any such proposed compensation changes. (See Feb. 15, 2005 Proxy Statement, annexed to Aug. 7, 2006, Aff. of Paul Vizcarrondo, Jr. as Ex. A.)

---

[4] Plaintiffs do not specify exactly when in the first quarter of 2005 the repurchase occurred.

[5] Because the proxy statement is integral to Plaintiffs' pleadings, the Court may properly consider it at this stage of litigation. See I. Meyer Pincus & Assocs. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991) (court may consider documents integral to pleadings on motion to dismiss).

The SAC also alleges that Morgan Stanley's aircraft leasing business, AWAS, was severely impaired on or around February 2005, and that Morgan Stanley was obligated under relevant accounting standards to write down the value of AWAS by an unspecified amount at an earlier, unspecified time. (SAC ¶¶ 144-148.) In Plaintiffs' Opposition to the Independent Directors' motion to dismiss, Plaintiffs assert for the first time that the board concealed information pertaining to the impairment of AWAS from being revealed in the February 2005 proxy statement. (Opp'n to Independent Directors' Mot. to Dismiss at 9-10.) However, excerpts from Morgan Stanley's public filings with the SEC from 2002 to 2005 show[6] that there were write-downs in prior periods as well as disclosures relating to problems with the aircraft leasing business following the events of September 11, 2001. (See Vizcarrondo Aff. Exs. B-E.)

In May 2005, in separate litigation, a Florida trial court entered a judgment against Morgan Stanley in the amount of about $1.5 billion. Plaintiffs allege that the large judgment resulted in part from an adverse inference order entered in connection with Morgan Stanley's improper handling of electronic discovery in that case. (SAC ¶¶ 31, 170.) See generally Coleman (Parent) Holdings, Inc. v. Morgan Stanley & Co., Inc., No. CA 03-5045 AI, 2005 WL 674885 (Fla. Cir. Ct. Mar. 23, 2005) (adverse inference order). The $1.5 billion verdict was later reversed by the appellate court, however, and the Supreme Court of Florida subsequently denied a petition for review of that reversal decision. See generally Morgan Stanley & Co., Inc. v. Coleman (Parent) Holdings, Inc., 955 So. 2d 1124 (Fla. Dist. Ct. App. 2007); Coleman (Parent) Holdings, Inc. v. Morgan Stanley & Co., Inc., No. SC07-1251, 2007 WL 4336316 (Fla. Dec. 12, 2007).

---

[6] See Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("public disclosure documents required by law to be, and that have been, filed with the SEC" may be considered on a motion to dismiss a complaint).

Plaintiffs argue that Defendants violated Section 14(a) of the Securities Exchange Act (15 U.S.C. § 78n(a)) and Rule 14a-9 promulgated thereunder[7] by concealing any mention of the Wells Notice in the February 2005 proxy statement. Plaintiffs additionally argue in their Opposition that they are pursuing a Section 14(a) claim premised on the board's concealment of AWAS's impairment. No such claim is, however, the allegation of which is not pleaded in the SAC. Plaintiffs also claim that Defendants violated Section 10(b) (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated thereunder,[8] asserting that the then-director defendants and Kempf concealed

---

[7] Section 14(a) of the Securities Exchange Act provides that "[i]t shall be unlawful for any person . . . in contravention of such rules and regulations as the [SEC] may prescribe . . . to solicit . . . any proxy or consent or authorization in respect of any security . . . registered pursuant to . . . this title." 15 U.S.C.A. § 78n(a) (West 1997). Rule 14a-9(a) promulgated thereunder provides that:

> No solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . .

17 C.F.R. § 240.14a-9(a).

[8] Section 10(b) of the Securities Exchange Act provides,

> It shall be unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C.A. § 78j(b) (West Supp. 2007). Rule 10b-5 promulgated thereunder provides:

> It shall be unlawful for any person . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the

the Wells Notice from the public in order to approve Morgan Stanley's repurchase of its own stock at artificially inflated prices.

Plaintiffs did not make a demand on the Morgan Stanley board to sue any of the defendants on any of the claims asserted in the SAC or described in the Opposition. (SAC ¶ 161.) In attempting to explain why making such a demand would be futile, Plaintiffs make generalized allegations to the effect that most of the defendants desire to maintain their offices and would never vote to sue themselves. Moreover, Plaintiffs set forth numerous allegations of personal connections among Defendants through past and present common board memberships, social relationships, geographic proximity, common use of Purcell's corporate jet, and having recruited one another to the Morgan Stanley board, arguing that such connections preclude the directors' exercise of independent judgment. (Id. ¶¶ 47-48.)

DISCUSSION

It is a long held principle of corporate law that directors manage the business of the corporation. Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000). Where a shareholder brings a derivative lawsuit on behalf of the corporation against the directors based on their actions or failure to act, there is a threshold question of standing, focused on whether the shareholder has exhausted intracorporate remedies, namely, whether the shareholder has made a demand on the board of directors. Fed. R. Civ. P. 23.1; accord Del. Ch. Ct. R. 23.1. Federal Rule of Civil Procedure 23.1 requires that the

---

purchase or sale of any security.

17 C.F.R. § 240.10b-5.

complaint "state with particularity any effort by the plaintiff to obtain the desired action from the directors . . . and the reasons for not obtaining the action or not making the effort." Id.; accord Del. Ch. Ct. R. 23.1. Because Rule 23.1 requires that Plaintiffs make particularized allegations, it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6). In re Trump Hotels S'holder Derivative Litig., Nos. 96 Civ. 7820 DAB, 96 Civ. 8527 DAB, 2000 WL 1371317, at *6 (S.D.N.Y. Sept. 21, 2000).

In the instant matter, Plaintiffs concede that they did not make a demand on the Defendants. Their standing to raise the claims on Morgan Stanley's behalf therefore turns on the question of demand futility. The Court evaluates demand futility according to the law of the state in which the company is incorporated, and therefore applies Delaware state law here. In re Trump Hotels, 2000 WL 1371317, at *6 (citing Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991)).

*Applicable Demand Futility Standard*

In Aronson v. Lewis, 473 A.2d 805 (Del. 1984), the Delaware Supreme Court held that plaintiffs seeking to establish demand futility must "plead particularized facts that create a reasonable doubt that 1) the directors are disinterested and independent, or [that] 2) the challenged transaction was a valid exercise of business judgment." Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. 1995) (citing Aronson, 473 A.2d at 814). Such reasonable doubt must be raised as to a majority of the board of directors sitting at the time the complaint is filed. See Harris v. Carter, 582 A.2d 222, 228 (Del. Ch. 1990).[9] Whether or not "reasonable doubt" exists "must be decided by the

---

[9] At the time the original complaint was filed, the board was made up of the following directors: Brennan, Davies, Jacob, Kidder, Knight, Madigan, Marsh, Miles, Tyson, Zumwinkel, and John Mack ("Mack"), (SAC ¶ 149). Only Mack, who replaced Purcell as CEO, is not named as a defendant in this lawsuit.

trial court on a case-by-case basis" and not by any "rote and inelastic" criteria. Grobow v. Perot, 539 A.2d 180, 186 (Del. 1988), overruled on other grounds by Brehm.

Defendants argue, however, that the Court should not apply the two-pronged Aronson test, and that the Court should instead apply the demand futility test established by the Delaware Supreme Court in Rales v. Blasband, 634 A.2d 927 (Del. 1993). The Rales test essentially eliminates the business judgment rule prong of the Aronson test and focuses solely on whether the pleadings create a reasonable doubt that a majority of directors are disinterested and independent. See Rales, 634 A.2d at 933-34. Courts apply the Rales test "where the subject of the derivative suit is not a business decision of the board," id. at 934, because in such a scenario, it would not be possible to apply the second prong of the Aronson test -- whether a decision was the product of sound business judgment -- when there is no decision to analyze in the first place. Id. at 933 ("The absence of board action, therefore, makes it impossible to perform the essential inquiry contemplated by Aronson - whether the directors have acted in conformity with the business judgment rule in approving the challenged transaction.").

The Court finds that the Rales standard is applicable here, because the isolated and conclusory references to the board's "conceal[ment]" of, or failure to "disclose," Morgan Stanley's receipt of the Wells Notice (SAC ¶¶ 98, 110), are insufficiently particularized to allege a specific board decision to omit the information from the proxy statement. See, e.g., IAC/Interactivecorp. Sec. Litig., 478 F. Supp. 2d 574, 596 (S.D.N.Y. 2007) (Rales applied where complaint alleged that defendant directors allowed misleading financial prospects to reach the public). There are no particularized allegations as to when any board member had any knowledge of the Wells Notice, no allegations explaining any process by which the board decided to omit the information, and no allegation that the board actively or purposefully made a decision to omit the information.

Compare In re Abbott Laboratories Deriv. S'holders Litig., 325 F.3d 795, 806 (7th Cir. 2003) (applying Aronson where complaint contained particularized allegations that "the board knew of the problems and decided no action was required") with Fink v. Weill, No. 02 Civ. 10250 (LTS)(RLE), 2005 WL 2298224, *3 n.6 (S.D.N.Y. Sept. 19, 2005) (applying Rales where Plaintiff proffered "generalized allegations that the defendant board members . . . participated" in the challenged activity and "equally generalized allegations of knowledge"); see Rales, 662 A.2d at 933 (instruction to apply Rales test "[w]here there is no conscious decision by directors to act or refrain from acting"). Therefore, the Rales standard applies. The Court analyzes Plaintiffs' Section 14(a) and Section 10(b) claims separately in determining whether the facts alleged in the SAC are sufficient to create any reasonable doubt as to the board members' disinterestedness and independence.

*The Section 14(a) Claim*

Plaintiffs allege that Defendants violated Section 14(a) by failing to disclose the Wells Notice in the February 2005 proxy statement. The Rales standard requires the Court to determine whether there are sufficient allegations in the SAC to create a reasonable doubt as to whether a majority of the board sitting at the time the original complaint was filed would have been sufficiently disinterested and independent in deciding whether Morgan Stanley should pursue the Section 14(a) claim that Plaintiffs have asserted in this action had a demand been made.

        Disinterestedness

"Disinterested" in this context generally means that "directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit" from the transaction. Aronson, 473 A.2d at 812. The February 2005 proxy statement was issued in connection with the

re-election of four unopposed board members, and Plaintiffs essentially assert that Defendants are not disinterested because of their desire to "perpetuate their control" of Morgan Stanley. (See, e.g., SAC ¶ 150.) However, there are no particularized allegations demonstrating that the board members' prospects of remaining in office were ever in serious doubt, or would have been in serious doubt if the Wells Notice had been revealed to shareholders in February 2005. See Green v. Phillips, Civil Action No. 14436, 1996 WL 342093, at *4 (Del. Ch. June 19, 1996) (no showing of disinterestedness where the complaint pleaded "no facts demonstrating an actual threat to the directors' positions") (emphasis in original). Nothing in the SAC asserts that the allegedly improper actions resulting in the issuance of the Wells Notice directly impugned the "honesty, loyalty or competency of [the] directors," Maldonado v. Flynn, 597 F.2d 789, 796 (2d Cir. 1979), in that there is no articulated connection between the circumstances giving rise to the Wells Notice warning and any actions taken by, or with the authorization of, any of the four board members up for re-election. Cf. In re Browning-Ferris Indus., Inc. S'holder Derivative Litig., 830 F. Supp. 361, 366 (S.D.Tex. 1993) ("plaintiffs do not indicate that any of the pending suits[, the existence of which was omitted from the proxy statement,] were against directors elected by votes on the proxy solicitations at issue"). Therefore, Plaintiffs' allegations that Defendants are not disinterested because of their desire to remain in office are insufficiently substantiated with particularized allegations to create an issue as to demand futility.

Nor are Plaintiffs' unsubstantiated, generalized allegations with respect to remaining in power sufficient in and of themselves. See Lewis v. Graves, 701 F.2d 245, 250 (2d Cir. 1983) ("If a derivative plaintiff could show self-interest in a transaction by mere conclusory allegations that the defendant directors approved a business acquisition simply to secure their own positions, without providing any logical or factual nexus between the transaction and the asserted

entrenchment, the demand requirement of Rule 23.1 would . . . become virtually meaningless").

A reasonable doubt as to disinterestedness can also be shown if Plaintiffs' particularized allegations, construed as true, demonstrate a "substantial likelihood" of Defendants' personal liability. Rales, 634 A.2d at 936 (finding a reasonable doubt of disinterestedness where "the potential for liability is not 'a mere threat' but instead may rise to 'a substantial likelihood.'") (citing Aronson, 473 A.2d at 815). "To state a claim under Section 14(a) and Rule 14a-9, a shareholder must allege that (1) his proxy was solicited for authorization of a corporate action; and (2) the proxy solicitation was materially false or misleading." In re Trump Hotels, 2000 WL 1371317, at *11 (citing Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 384-85 (1970)). To succeed on a Section 14(a) claim, a plaintiff must make "a sufficient showing of [a] causal relationship between the violation and the injury for which he seeks redress . . . [by proving] that the proxy solicitation itself . . . was an essential link in the accomplishment of the transaction." Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 385 (1970). In this case, the SAC contains no particularized allegations that, construed as true, would indicate a substantial likelihood of Section 14(a) liability on the part of any of the defendants.

The SAC alleges that, as a result of the re-election of Jacob, Knight, Marsh and Tyson in March 2005, Morgan Stanley suffered the $1.5 billion jury verdict in May 2005 and was exposed to "additional civil fines and penalties for continuously flaunting federal law requiring e-mails to be retained." (SAC ¶ 170.) The jury verdict however, was later reversed. Moreover, Plaintiffs allege no facts linking the re-election with any action or decision that resulted in the $1.5 billion verdict. The only other "civil fines and penalties" mentioned in the SAC in connection with e-mail retention all occurred prior to the alleged proxy omission (see, e.g., id. ¶ 24) and, to the extent Plaintiffs allege future penalty exposure, no particularized allegations exist to that effect. Plaintiffs' Opposition

additionally sets forth conclusory theories of causation, not pleaded in the SAC, between the March 2005 re-election and various injuries. These injuries include increased board compensation, allegedly wasteful severance packages, and drops in stock prices. (Opp'n to Independent Directors at 16.) However, the vote to increase board compensation occurred in January 2005 (id. ¶ 151), and nothing in the actual proxy statement seeks approval of, or indeed makes any mention of any such proposed compensation changes;[10] and nothing specific is asserted connecting the re-election of the four board members with actions or authorizations of action directly giving rise to the severance packages or drops in the price of Morgan Stanley stock. See Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705, 722 (2d Cir. 1980) ("For example, if corporate officers are elected through solicitations which failed to disclose a material lack of qualifications, and those improperly elected officers subsequently proceed to harm the corporation and its shareholders through acts of deceit, waste or mismanagement which were not themselves authorized by the proxies, a suit to permit recovery of resultant damages will not be permitted"). Plaintiffs' eleventh-hour attempts to articulate causal links not even alleged in the SAC are conclusory and proffer no facts demonstrating any substantial likelihood of success on the Section 14(a) claim.

Plaintiffs' ability to demonstrate a substantial risk of liability is further undermined by the lack of any specific allegations that the omission of information regarding the Wells Notice

---

[10] Because raises in director fees were never actually proposed in the February 2005 proxy statement, and in light of the contradictory allegation in Paragraph 151 of the SAC that director raises were granted in January 2005, at the time the Wells Notice was received and before the proxy statement in question was even issued, the Court will not construe as true any allegation in the SAC that suggests that stockholders approved director raises as a result of the February 2005 proxy statement (see, e.g., SAC ¶ 170), nor will the Court address any other argument relying on that allegation. See Rieger v. Drabinsky, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) ("a court need not feel constrained to accept as truth conflicting pleadings that . . . are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely").

violated established SEC regulations or any rules implicit in the regulations that specifically govern proxy statements issued in connection with board elections and are intended to ensure that shareholders are not misled. See generally United States v. Matthews, 787 F.2d 38, 48 (2d Cir. 1986) (rejecting requirement that "management make qualitative disclosures that were not at least implicit in the Commission's rules"); Schedule 14A, Item 7(b), 17 C.F.R. § 240.14a-101 (proxy materials must disclose litigation pending "that are material to an evaluation of the ability or integrity of any director [up for election]"). There has therefore been no showing of reasonable doubt as to Defendants' disinterestedness on the basis that Defendants face a substantial likelihood of Section 14(a) liability.

Plaintiffs' repeated assertions that a demand on the board would be tantamount to asking Defendants to "sue themselves" (SAC ¶¶ 158, 161, 163, 164) and Plaintiffs' allegation that Defendants' directors' and officers' liability insurance policies have an "insured vs. insured" exclusion that provides coverage for suits filed by Morgan Stanley against the directors and officers unless such a suit is a derivative action (id. ¶ 161(f)) also do not create a reasonable doubt as to disinterestedness, as courts have consistently found. See Ferre v. McGrath, No. 06 Civ. 1684 CM, 2007 WL 1180650, at *7 (S.D.N.Y. Feb. 16, 2007) ("The rote allegation that directors would have to sue themselves has been consistently rejected as a basis for excusing demand . . . . The existence of a so-called 'insured versus insured' exclusion . . . likewise fails to establish director interest. Indeed, this argument has been rejected repeatedly under Delaware law."); Brehm, 746 A.2d at 257 n.34 ("It is no answer to say that demand is necessarily futile because (a) the directors 'would have to sue themselves, thereby placing the conduct of the litigation in hostile hands,' or (b) that they approved the underlying transaction"); Decker v. Clausen, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (insured vs. insured exclusion allegation merely a

"variation[] on the 'directors suing themselves' . . . refrain").

Therefore, Plaintiffs' pleadings are insufficient to create a reasonable doubt as to the disinterestedness of a majority of the board sitting at the time the SAC was filed in connection with the Section 14(a) claim.

Independence

Nor do Plaintiffs' pleadings create a reasonable doubt as to the board members' independence in deciding whether to approve Morgan Stanley's adoption of Plaintiffs' Section 14(a) claim. In the demand futility context, "independent" means that "a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." Aronson, 473 A.2d at 816. Plaintiffs' SAC lists Defendants' past and current business associations with one another (SAC ¶ 47(c)(i)-(vi));[11] notes that most of the Defendants reside "in Chicago or the Midwest" (id. ¶ 47(c)(vii)); and alleges that Purcell, Knight and Brennan were members of the Augusta National Golf Club (id. ¶ 47(c)(viii)); that Purcell permitted board members to have personal use of the corporate jet (id. ¶ 47(d)); that Purcell recruited Brennan, Davies, Jacob, Knight, Madigan and Tyson to the Morgan Stanley board (id. ¶¶ 48(b), 50, 51, 53, 54, 57); and that Miles recruited Marsh and Kidder to the Morgan Stanley board (id. ¶ 47(c)(iii)). The existence of these relationships, without more, falls far short of suggesting that "the directors

---

[11] Plaintiffs' SAC alleges the following business relationships: Brennan, Kidder, Marsh and Miles sat with Purcell on the Dean Witter board prior to 1997. Brennan recruited Miles to join the board at Sears in 1992. Brennan mentored Purcell at Sears. Miles was chair of the board at Sears. Miles, Marsh, Kidder and Brennan served on the board at Kraft. Purcell, Davies, Kidder, Marsh and Zumwinkel were all partners at McKinsey & Co. Purcell, Miles and Brennan serve on the AMR Corp. board. Knight and Tyson serve on the SBC Corp. board. Knight and Jacob serve on the Anheuser-Busch board. (SAC ¶ 47(c)(i)-(vii)). Brennan and Madigan both "have positions" at Rush University Medical Center. (Id. ¶ 48(f).)

are 'beholden' to [interested parties] or so under their influence that their discretion would be sterilized." Weill, 2005 WL 2298224, at *3 (quoting Rales, 634 A.2d at 936); see also Beam v. Stewart, 845 A.2d 1040, 1050-52 (Del. 2004) ("Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence . . . . [F]or presuit demand purposes, friendship must be accompanied by substantially more in the nature of serious allegations that would lead to a reasonable doubt as to a director's independence."); Aronson, 473 A.2d at 816 ("it is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director."); Halpert Enters. v. Harrison, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005) (allegations that "Board members sit together, in various configurations, on other boards do not call into question the ability of the board members to exercise proper business judgment"); Langner v. Brown, 913 F. Supp. 260, 266 (S.D.N.Y. 1996) (to same effect). Nor do Plaintiffs plead any facts suggesting that the use of the corporate jet would somehow translate into an obligation to repay Purcell in the future in the form of favorable board action, or explain how such an extraneous obligation, if any, would continue to exist when Purcell, the source of those privileges, had already left by the time the original complaint was filed.

Unlike the pleadings at issue in the cases on which Plaintiffs rely, Plaintiffs' allegations simply lack specificity concerning any improper benefit that might or would accrue to a director-defendant for voting against a demand to sue a former or current director or officer. See, e.g., Int'l Equity Capital Growth Fund, L.P. v. Clegg, No. Civ.A. 14995, 1997 WL 208955, at *3 (Del. Ch. Apr. 22, 1997) (demand was futile where defendant-CEO was also a majority shareholder of the nominal-defendant corporation and could, and indeed did on several occasions, unilaterally fire any board member who exercised independent judgment); In re New Valley Corp. Derivative

Litig., No. Civ.A. 17649, 2001 WL 50212, at *7 (Del. Ch. Jan. 11, 2001) (demand was futile where, in an action alleging impropriety of defendant-directors' approval of a substantial purchase of the assets of another corporation, several defendants held substantial equity in or were employed by the other corporation); Harbor Fin. Partners v. Huizenga, 751 A.2d 879, 889 (Del. Ch. 1999) (demand was futile where, in addition to defendant-director's 30-year history of "mutually advantageous business relations" with fellow defendant-director and their familial relationship as brothers-in-law, defendant-director's decision to sue would threaten $235 million of his stock holdings); Haseotes v. Bentas, No. Civ.A. 19155 NC, 2002 WL 31058540 (Del.Ch. 2002) (demand on particular director-defendant to vote to approve a lawsuit against his sister director-defendant was futile where, without conceivable reason, director-defendant once sued a partnership and every single partner in the partnership except his sister).

Plaintiffs' allegations that Defendants violated Section 14(a) by failing to disclose an unspecified degree of impairment in the value of AWAS in the February 2005 proxy statement are similarly insufficient to create the requisite reasonable doubt, particularly in light of the SEC filings proffered by Defendants indicating that write-downs were in fact made between 2002 and 2005. For this reason, and for substantially the same reasons set forth in this Opinion with respect to disinterestedness and independence, there is no showing of demand futility for a Section 14(a) claim as premised on the AWAS situation even if such allegations were properly pleaded in the SAC. Therefore, the SAC will be dismissed to the extent Plaintiffs are attempting to sue on that basis.

On the basis of the foregoing, the SAC does not create any reasonable doubt as to the relevant director-defendants' disinterestedness or independence with respect to the Section 14(a) claim and, therefore, Plaintiffs' Section 14(a) claim will be dismissed for failure to plead demand futility pursuant to Rales.

Moreover, even if the Court were to infer, based solely on Plaintiffs' generalized allegation that Defendants "concealed" or "did not disclose" the Wells Notice (SAC ¶¶ 110, 167), that Defendants personally knew about the Wells Notice and decided as a board to omit mention of the notice from the proxy statement, and therefore conclude that a specific board decision was being challenged by Plaintiffs such that the business judgment prong of Aronson would apply, Plaintiffs would still fail to sufficiently plead demand futility. For substantially the same reasons that led the Court to conclude that Plaintiffs have failed to demonstrate that any of the defendants faces a substantial risk of liability on the Section 14(a) claim, Plaintiffs have failed to proffer facts sufficient to create a reasonable doubt that a decision to omit mention of the Wells Notice from the proxy statement would pass the business judgment test.

For the foregoing reasons, the Court dismisses Plaintiffs' Section 14(a) claim without prejudice to a claim that may be raised by Plaintiffs on behalf of Morgan Stanley following a proper demand on the Morgan Stanley board. See Grossman v. Johnson, 674 F.2d 115, 125-26 (1st Cir. 1982); Shlensky v. Dorsey, 574 F.2d 131, 141-42 (3d Cir. 1978).

*The Section 10(b) Claim*

Plaintiffs' Section 10(b) claim asserts that, because the board did not reveal the Wells Notice to the public, Morgan Stanley's stock prices were artificially inflated, resulting in damages to Morgan Stanley when it repurchased its own stock during the first quarter of 2005. Plaintiffs seek, on behalf of Morgan Stanley, damages for the artificially high prices that it paid for the stock at that time. Plaintiffs did not make a demand on the board as to this claim, and the SAC is devoid of any specific allegations of a board decision to conceal the Wells Notice from the public, so the Court must again apply the Rales analysis.

The pleadings do not provide a factual basis for reasonable doubt with respect to Defendants' disinterestedness or independence as to this claim. As explained in the preceding Section 14(a) analysis, Plaintiffs' allegations as to business and social relationships are insufficient to create any reasonable doubt as to Defendants' independence. With regard to disinterestedness, there are no allegations whatsoever as to what specific benefit was obtained by any defendant as a result of Morgan Stanley's stock repurchase, and as such there is no improper motive shown that would cast doubt on whether Defendants would be disinterested in considering whether to adopt Plaintiffs' Section 10(b) claim. The lack of any particularized allegation as to motive also derails any attempt by Plaintiffs to establish a substantial likelihood of liability with respect to Plaintiffs' Section 10(b) claim. Moreover, without any particularized allegation pointing to improper motive, the SAC also fails to create reasonable doubt with respect to business judgment even if Aronson were to apply.

For these reasons, the Section 10(b) claim does not survive the Rales analysis and the claim is dismissed without prejudice to a derivative claim being raised after a proper demand is made on the Morgan Stanley board.

*Common Law Claims*

Having dismissed Plaintiffs' federal claims, the only claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction of Plaintiffs' remaining common law claims. See 28 U.S.C. § 1367(c)(3); Valencia v. Lee, 316 F.3d 299, 307 (2d Cir. 2003).

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Second Amended Complaint are granted, without prejudice to renewal following a proper demand on the Morgan Stanley board.

The Clerk of Court is respectfully requested to terminate all of the pending motions, enter judgment dismissing the federal claims for failure to make a proper demand on the Board of Directors and declining to exercise supplemental jurisdiction of the common law claims, and to close this case.

Dated: New York, New York
March 27, 2008

/s/ Laura Taylor Swain

LAURA TAYLOR SWAIN
United States District Judge